THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| VIDANGEL LLC,<br><br>        Plaintiff,<br><br>v.<br><br>CLEARPLAY, INC.; and DOES 1 through 10,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [271] COUNTERCLAIM DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:14-cv-00160-DBB-CMR<br><br>District Judge David Barlow |
| CLEARPLAY, INC.,<br><br>        Counterclaim Plaintiff,<br><br>v.<br><br>VIDANGEL LLC, JEFFREY HARMON, NEAL HARMON, and DOES 1 through 10,<br><br>        Counterclaim Defendants. | |

In December of 2013, VidAngel filed this case against ClearPlay, seeking declaratory judgment of non-infringement on ClearPlay's patents, or a judgment of invalidity of ClearPlay's patents.[1] ClearPlay initially counterclaimed for patent infringement.[2] In June of 2022, ClearPlay amended its Answer and added two additional counterclaims: a claim for violation of the Digital Millennium Copyright Act, and a claim for tortious interference with prospective economic

---

[1] Compl. for Declaratory J. of Patent Non-Infringement and Invalidity ("Compl."), ECF No. 1.
[2] *See* Answer to Compl., Countercls., and Third-Party Claims, ECF No. 20.

1

relations.[3] Now, VidAngel seeks summary judgment on the two non-patent counterclaims.[4] For the following reasons, the court grants VidAngel's motion.

## BACKGROUND

Both VidAngel and ClearPlay offer products designed to remove objectionable content—profanity, nudity, violence, etc.—from multimedia.[5] On December 30, 2013, after receiving a demand letter from ClearPlay that asserted VidAngel was infringing on ClearPlay's patents, VidAngel commenced this suit.[6] ClearPlay responded by filing six counterclaims, each asserting that VidAngel infringed on ClearPlay's patents.[7] From February 2015 to November 2016, the case was stayed pending *inter partes* review of ClearPlay's patents.[8] The case was again stayed in March 2017 pending the outcome of litigation between VidAngel and various movie studios.[9] And on October 18, 2017 VidAngel filed for bankruptcy,[10] triggering an automatic stay under 11 U.S.C. § 362. The studios litigation resulted in a finding that VidAngel violated various studios' copyrights, which in turn resulted in a judgment of $62 million against VidAngel, entered in September 2019.[11]

In January 2022, after all stays were lifted, ClearPlay moved to amend its answer and counterclaims to add the non-patent counterclaims at issue here.[12] The parties at that time

---

[3] Third Am. Answer to Compl. and Countercls. ("Countercls.") ¶¶ 53–67, ECF No. 232.
[4] VidAngel LLC, Jeffrey Harmon, and Neal Harmon's Mot. for Summ. J. on ClearPlay's Countercls. 7 and 8 ("VidAngel Mot."), ECF No. 271.
[5] *See* ClearPlay, Inc.'s Mem. in Opp'n to VidAngel LLC, Jeffrey Harmon, and Neal Harmon's Mot. for Summ. J. on ClearPlay's Countercls. 7 and 8 ("ClearPlay Opp'n") at 9, ECF No. 286.
[6] Compl. ¶ 21–24; Countercls. ¶ 21–24.
[7] Answer to Compl., Countercls., and Third-Party Claims 9–16.
[8] Order Granting Countercl. Def.s' Mot. for Stay Pending Inter Partes Review, ECF No. 131; Docket Text Order Reopening Case, ECF No. 138.
[9] Mem. Decision and Order Granting Mot. to Stay and Denying Mot. for Scheduling Order, ECF No. 159.
[10] Notice of Bankruptcy, ECF No. 170.
[11] *See* ClearPlay Opp'n 10–11.
[12] Mot. to Amend, ECF No. 199.

disputed whether ClearPlay should be permitted to add the claims, given the prior bankruptcy proceeding and discharge.[13] The court held that given ClearPlay's averment that it only discovered evidence relevant to the two additional claims after bankruptcy discharge, the amendment was timely and presented no particular prejudice to VidAngel.[14] ClearPlay filed its amended pleading on June 23, 2022.[15] ClearPlay alleges that VidAngel continued to violate movie studios' copyrights by streaming illegally-copied content to its customers after the entry of a permanent injunction in the litigation with the various movie studios.[16] From this conduct, ClearPlay alleges that VidAngel violated copyright law and committed tortious interference against ClearPlay.[17]

On May 16, 2023, VidAngel moved for summary judgment on the non-patent claims.[18] ClearPlay filed its opposition on June 23, 2023.[19] VidAngel filed its reply on July 28, 2023.[20]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the

---

[13] *See* Order Granting ClearPlay's Mot. for Leave to Amend 3, ECF No. 231.
[14] *Id.*
[15] Countercls.
[16] Countercls. ¶¶ 56–59.
[17] *Id.* at ¶¶ 53–67.
[18] VidAngel Mot.
[19] ClearPlay Opp'n.
[20] Reply in Support of VidAngel's Mot. For Summary Judgment on ClearPlay's Counterclaims 7 and 8 ("VidAngel Reply"), ECF No. 298.
[21] Fed. R. Civ. P. 56(a).

evidence presented."[22] "'All disputed facts must be resolved in favor of the party resisting summary judgment.'"[23] However, "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue."[24]

## DISCUSSION

In support of its Motion, VidAngel makes five arguments: (1) the non-patent claims cannot be based on any conduct prior to VidAngel's bankruptcy confirmation[25]; (2) ClearPlay falls outside the zone of interests of the Digital Millennium Copyright Act ("DMCA")[26]; (3) ClearPlay's DMCA claims fail for a lack of evidence[27]; (4) ClearPlay's tortious interference claim is preempted by the DMCA[28]; and (5) ClearPlay's tortious interference claim fails for a lack of evidence on the intentional interference element.[29] Because the court finds the second and fifth arguments to be dispositive, it does not reach the remaining issues.

### A. Zone of Interests of the DMCA

The "DMCA"[30] was passed "to update domestic copyright law for the digital age."[31] The DMCA added to Title 17 a chapter dealing with circumvention of copyright protection.[32] 17

---

[22] *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).
[23] *White v. Gen. Motors Corp.*, 908 F.2d 669, 670 (10th Cir. 1990).
[24] *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018) (quoting *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017)).
[25] VidAngel Mot. 6.
[26] *Id.* at 8.
[27] *Id.* at 14.
[28] *Id.* at 12–14.
[29] *Id.* at 17.
[30] *See* Pub. L. No. 105-304, 112 Stat. 2860 (1998).
[31] *BWP Media USA, Inc. v. Clarity Digit. Grp., LLC*, 820 F.3d 1175, 1177 (10th Cir. 2016) (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 26 (2d Cir. 2012)).
[32] *See* 17 U.S.C. §§ 1201–1205.

U.S.C. § 1201(a) provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."[33]

VidAngel argues that the DMCA does not extend a private cause of action to ClearPlay because ClearPlay is not the copyright owner or the owner of a technological system meant to protect copyrighted works.[34] ClearPlay responds by citing a number of cases that find that the DMCA does not only apply to copyright owners.[35] It emphasizes that the purpose of the DMCA is to strengthen copyright protection and contends that its counterclaim furthers this purpose.[36] VidAngel replies by pointing out that ClearPlay's only alleged injury is by reason of being a competitor, and no case has extended the DMCA to injuries based only on competitive disadvantage.[37]

While 17 U.S.C. § 1203 provides that "[a]ny person injured by a violation of section 1201 . . . may bring a civil action in an appropriate United States district court for such violation,"[38] the U.S. Supreme Court has found that "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"[39] And

---

[33] 17 U.S.C. § 1201(a)(1)(A).
[34] VidAngel Mot. 8–9.
[35] ClearPlay Opp'n 22–23.
[36] *Id.* at 23–24.
[37] VidAngel Reply 11–14; *see also* Countercls. ¶¶ 60–61.
[38] 17 U.S.C. § 1203(a).
[39] *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

while the zone of interests inquiry is not particularly demanding,[40] it is not enough that the statute at issue provides a cause of action to "any person injured."[41]

Section 1201 is plainly meant to encourage technological measures that control access to a copyrighted work.[42] Several non-binding cases have found that the cause of action in 17 U.S.C. § 1203 is not limited exclusively to copyright owners.[43] However, these cases extend the cause of action in Section 1203 only so far as owners of the technology alleged to have been circumvented.[44] The court is not aware of any cases extending the cause of action in Section 1203 beyond copyright owners and owners of an access control measure. Given the language of Section 1201—"[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title"[45]—the court concludes that the zone of interests of Section 1201 includes copyright owners and owners of an access control measure,[46] but does not

---

[40] *Id.* at 130 ("[T]he test 'forecloses suit only when a plaintiff's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that"' Congress authorized that plaintiff to sue." (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012))).

[41] *See id.* at 122, 129–30; *see also Ass'n of Data Processing Service Orgs., Inc. v. Camp*, 397 U.S. 150, 156 (1970) (engaging in the zone of interests inquiry notwithstanding the Administrative Procedure Act's grant of a cause of action to any person "aggrieved by agency action").

[42] *See* 17 U.S.C. § 1201(a).

[43] *See, e.g.*, *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99-cv-02070, 2000 WL 127311, *3, 6 (W.D. Wash. Jan. 18, 2000) (holding RealNetworks could sue under Section 1203 given that it's technology protected owners' copyrights); *EchoStar Satellite, LLC v. Viewtech, Inc.*, 543 F.Supp.2d 1201, 1206 (S.D. Cal. 2008) (holding EchoStar could sue under Section 1203 given that it had authority to control copyrighted works); *D&J Optical, Inc. v. Wallace*, No. 1:14-cv-658-MHT, 2015 WL 1474146, *6 (M.D. Ala. Mar. 31, 2015) (rejecting the argument that a plaintiff could not sue for an alleged violation of Section 1201 because they were not the copyright owner); *DISH Network LLC v. Whitehead*, No. 3:09-cv-532-J-32JRK, 2011 WL 6181732, *5 (M.D. Fla. Dec. 13, 2011) (granting summary judgment to holders of access control measures). *But see Sheldon v. Plot Com.*, 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, * 9–10 (E.D.N.Y. Aug. 26, 2016) (suggesting the Section 1203's zone of interests is limited to copyright owners).

[44] *See* sources cited *supra* note 43.

[45] 17 U.S.C. § 1201(a)(1)(A).

[46] Indeed, this is also the conclusion reached by the treatise cited by ClearPlay. *See* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12A.12 (Matthew Bender rev. ed., updated 2023) (noting that cases recognize statutory standing in "plaintiffs who provide security measures rather than being content owners").

extend to those who merely allege competitive disadvantage flowing from the alleged violation of copyrights or circumvention of access control measures in which they have no legal interest.

*RealNetworks, Inc. v. Streambox, Inc.*[47] is illustrative. There, RealNetworks sued Streambox for a violation of the DMCA.[48] RealNetworks provided software that enabled multimedia streaming.[49] Its software secured "the content against unauthorized access or copying," and the court found that this feature was a large part of RealNetworks' success.[50] Streambox had developed a product that would allow users to access RealNetworks' files located on its servers for download.[51] The court found that this product would harm RealNetworks, given that RealNetworks' customers could be led to believe that their content was not actually secure from unauthorized copying.[52] While the court there was not faced with a zone of interests issue, it held that RealNetworks had statutory standing.[53] It is not hard to see why RealNetworks would fall within the zone of interests of the DMCA: it supplied an access control measure under Section 1201 that was being circumvented, and its injuries were proximately caused by that circumvention. Therefore, the copyrighted work was less secure, contrary to the purposes of the statute.

The difference between the findings in *RealNetworks* and the undisputed facts in this case highlights why ClearPlay does not fall within the zone of interests of the DMCA. It is undisputed that "ClearPlay does not claim that it owns the copyrighted material that VidAngel has

---

[47] 2000 WL 127311 (W.D. Wash. Jan. 18, 2000).
[48] *Id.* at *1.
[49] *Id.* at *1–2.
[50] *Id.* at *2–3.
[51] *Id.* at *4.
[52] *Id.* at *5.
[53] *Id.* at *6.

infringed,"[54] nor does it "claim that a copyright owner has authorized it to protect the copyrighted material."[55] And crucially, "ClearPlay does not claim that it supplies any access-control technology that VidAngel has circumvented."[56] Nor does ClearPlay allege that is an agent or otherwise in privity with any such individual or entity. Unlike in *RealNetworks*, where the technology at issue actually secured against copyright violations, ClearPlay can only claim that its suit indirectly furthers the purposes of the statute by increasing enforcement (through litigation) of copyright violations.[57] By ClearPlay's logic, anyone who could establish any Article III injury—no matter how remote—could still sue under any statute on the grounds that increased litigation supports enforcement of the statute. That cannot be correct. Put otherwise, that Congress intended a statute to be enforced does not mean that anyone seeking to enforce that statute falls within its zone of interests.

Therefore, because there is no dispute of material fact that ClearPlay is not a copyright owner or a supplier of a technological control-measure, or in privity with the same, and because these facts establish that ClearPlay is not within the zone of interests of Section 1201, VidAngel is entitled to judgment as a matter of law on ClearPlay's DMCA claim.

### B. Tortious Interference

VidAngel argues that ClearPlay has failed to present a genuine issue of material fact as to one of the elements of its tortious interference claim.[58] The elements of tortious interference under Utah law are: (1) intentional interference with existing or potential economic relations; (2)

---

[54] ClearPlay Opp'n 7.
[55] *Id.*
[56] *Id.*
[57] *Cf. id.* at 23–24.
[58] VidAngel Mot. 17–19.

8

by improper means; (3) that causes injury to the plaintiff.[59] Only the first element is apparently at issue.[60]

The question in this case is whether competition alone, assuming improper means, is sufficient to establish that an entity intentionally interfered with existing or potential economic relations. *St. Benedict's Development Co. v. St. Benedict's Hospital*[61] is helpful. There, the hospital leased land to the development company which was to "construct, operate, and maintain a medical office building" on that land.[62] The parties entered into several subsequent agreements, under which the development company would construct new office buildings adjacent to the original, and under which the hospital would help the development company obtain tenants for the new building.[63] Tenants of one of the old buildings "notified the development company that they did not intend to renew their leases" but would instead move to the new building once completed.[64] The development company alleged that the hospital had solicited tenants to not renew their existing leases, and instead to move into the new building.[65] The Utah Supreme Court held that this "allegation of solicitation" was sufficient to state a claim for the first element.[66] This kind of direct solicitation or interference has routinely been held to satisfy the first element.[67] Indeed, as the Utah Supreme Court observed in the seminal case establishing

---

[59] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982)).
[60] ClearPlay argues that the second element is indisputably established, *see* ClearPlay Opp'n 36 n.21, and VidAngel apparently does not argue otherwise, *cf.* VidAngel Reply 18–20. And neither party clearly argues that ClearPlay has or has not raised a dispute as to material fact on the third element.
[61] 811 P.2d 194 (Utah 1991).
[62] *Id.* at 196.
[63] *Id.* at 196–97.
[64] *Id.* at 197.
[65] *Id.* at 201.
[66] *Id.*
[67] *See, e.g.*, *Leigh Furniture*, 657 P.2d at 305–07 (holding frequent disruptions during business hours was sufficient to find intentional interference); *see also Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶¶ 2, 18–19, 192

tortious interference in Utah: "Driving away an individual's existing or potential customers is the archetypical injury this cause of action was devised to remedy."[68] The parties do not cite any Utah caselaw holding that competition alone is sufficient.

The only evidence ClearPlay raises in an effort to resist summary judgment is that VidAngel has a competitive advantage over ClearPlay.[69] It contends that some current customers switched to VidAngel's services, and that potential customers purchased VidAngel's services rather than Clearplay's, because ClearPlay was unable to stream filtered content to its customers.[70] But this is immaterial to ClearPlay's claim; the evidence does not show the kind of activities that are required to prove intentional interference. Nothing in the evidence offered by ClearPlay suggests that VidAngel intentionally directed its activities at ClearPlay in the way tortious interference requires; that ClearPlay is a competitor, even the main competitor, of VidAngel is insufficient. Under ClearPlay's theory of the case, any time a business violated the law (assuming that any such violation indeed is sufficient to establish the improper means element), its competitors would have a cause of action for tortious interference simply by virtue of the competitive advantage caused by the violation. Such is not the case. And contrary to ClearPlay's suggestion,[71] merely attracting another business's customers with a competing product is not the same thing as driving them away. ClearPlay identifies no Utah case so holding, and the court is not aware of any.

---

P.3d 858 (implying that the intentional interference element was satisfied when one company caused pop-up advertisements to appear on its competitor's website).
[68] *Leigh Furniture*, 657 P.2d at 306.
[69] *See* ClearPlay Opp'n 15–16.
[70] *Id.*
[71] *Id.* at 37.

Therefore, there is no dispute of material fact as to whether VidAngel intentionally interfered with ClearPlay's current or prospective economic relations. VidAngel is entitled to judgment as a matter of law on ClearPlay's tortious interference claim.

## ORDER

Accordingly, the court GRANTS VidAngel's Motion for Partial Summary Judgment as to the non-patent claims.

Signed November 20, 2023.

BY THE COURT

David Barlow
United States District Judge